## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH REAVES,** | : | **Civil No. 1:21-CV-0904** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SGT. O.E. ROWLES, JOHN DOE,** | : | |
| **TYREE C. BLOCKER, AND** | : | |
| **CAPTAIN ROBERT EVANCHICK,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.    Factual Background

This is a *pro se* lawsuit brought against several law enforcement officers of the Pennsylvania State Police for alleged civil rights violations under 42 U.S.C. § 1983. Joseph Reaves, a convicted rapist and sex offender, initially brought this case on January 9, 2021 alleging constitutional violations related to the requirement that he register on the sex offender registry under Pennsylvania's Sex Offender Registration and Notification Act (SORNA). (Doc. 2, at 3-4). Specifically, he alleges that the requirement that he register for life violates his rights under the Fifth, Eighth, and Fourteenth Amendments as well as his right to "fair housing."

At bottom, this case involves Pennsylvania's statutory requirement that certain sex offenders register with the Pennsylvania State Police. The Pennsylvania General Assembly has enacted various iterations of the regulations, which the

Pennsylvania Commonwealth Court summarized in its review of Reaves' Petition

for Review of the requirement that he register:

> The General Assembly enacted the first of these statutes, commonly
> known as Megan's Law I, *formerly* 42 Pa.C.S. §§ 9791-9799.6 in 1995,
> followed five years later, in 2000, by what is commonly known as
> Megan's Law II, *formerly* 42 Pa.C.S. §§9791-9799.7. In 2004, the
> General Assembly enacted what is commonly known as Megan's Law
> III, *formerly* 42 Pa.C.S. §§ 9791-9799.9, which remained in effect until
> the enactment of the Sexual Offender Registration and Notification Act
> (SORNA I), 42 Pa.C.S. §§ 9799.10-9799.41, in 2012. On July 19, 2017,
> the Pennsylvania Supreme Court handed down the decision in *Muniz*,
> which held that a portion of SORNA I violated the *ex post facto* clauses
> of the United States and Pennsylvania Constitutions by retroactively
> increasing registration obligations on certain sex offender registrants.
> Thereafter, in 2018, the General Assembly enacted SORNA II. *See* Act
> of February 21, 2018, P.L. 27, No. 10, §§ 1-20, effective February 21,
> 2018 (Act 10); Act of June 12, 2018, P.L. 140, No. 29, §§ 1-23,
> effective June 12, 2018 (Act 29).

(Doc. 32, at 4). As the defendants point out in their brief, SORNA II addressed the

Pennsylvania Supreme Court's decision in Commonwealth v. Muniz, 640 Pa. 699

(2017), by first clarifying that sex offender registration is a non-punitive collateral

consequence of conviction and by creating a subchapter which applies specifically

to the continued registration of sexual offenders convicted between April 22, 1996

and December 20, 2012. 42 Pa. Cons. Stat. §§ 9799.11(b)(4), 9799.11(c), 9799.52.

In 2009, Reaves was convicted in the Court of Common Pleas of Philadelphia

County of several sex offenses, the most serious being Rape in violation of 18 Pa.

Cons. Stat. § 3121. Since his conviction in 2009, the sex offender registration

regulations have changed twice, and apply retroactively, changing the registration

requirements for previously convicted offenders. Under the most recent statutory requirements, 42 Pa. Cons. Stat. § 9799.55(b)(2)(i)(A), Reaves is required to register as a sexual offender for life, which he alleges is a change from his previous status of Tier 1 (15 years). (Doc. 2, at 4). His complaint alleges that the requirement that he register for life violates the Fourteenth Amendment *ex post facto* clause, as well as a myriad of other Fourteenth Amendment protections including right to marriage, right to procreate, right to privacy, equal protection, and reputation. (Id., at 3). He also alleges a vague Fifth Amendment claim,[1] an Eight Amendment claim for cruel and unusual punishment, and a violation of his right to "fair housing." (Id.)

The parties consented to magistrate judge jurisdiction, (Doc. 16), and on June 23, 2021, a motion to dismiss was filed on behalf of the police officer defendants, Rowles, Blocker, and Evanchick.[2] (Doc. 17). On July 22, 2021, Reaves filed a motion seeking an extension of time in which to respond to the defendants' motion to dismiss. (Doc. 25). We granted this request, ordering Reaves to respond to the motion to dismiss by September 6, 2021. (Doc. 29). Reaves also filed a motion to

---

[1] The plaintiff has listed a Fifth Amendment violation as a right at issue but has not articulated a Fifth Amendment injury in his complaint. (Doc. 2, at 3, 5). As he has provided no factual allegations supporting it, to the extent that he asserts a claim under the Fifth Amendment, it will be dismissed.

[2] The plaintiff has also listed Defendant John Doe in his complaint (Doc. 2, at 3), but does not articulate any cause of action against this unnamed Defendant, nor any reason why his identity cannot be ascertained. Thus, any claim against the John Doe defendant will be dismissed.

stay the proceedings pending a decision on his request for a state court declaration that he not required to register as a sex offender. (Doc. 24).  We denied the motion to stay without prejudice to Reaves arguing that a stay is appropriate in his response to the motion to dismiss. (Doc. 29). Reaves never responded to this motion to dismiss, and the response deadline passed without any further effort to comply with our prior order. On October 6, 2021, Reaves submitted a letter informing this Court of the Commonwealth Court's dismissal of his petition, and his intention to appeal, apparently disregarding the Court's prior denial of the stay and instruction that this matter be addressed in his response to the motion to dismiss. (Doc. 32). As the plaintiff has still not submitted a brief in opposition to the motion to dismiss as directed, we have deemed the motion to dismiss to be ripe for resolution.

## II.   <u>Discussion</u>

### A. <u>Under the Rules of This Court, This Motion Should Be Deemed Unopposed and Granted.</u>

At the outset, under the Local Rules of this Court, the plaintiff should be deemed to concur in this motion to dismiss since the plaintiff has failed to timely oppose the motion or otherwise litigate this case. These procedural defaults completely frustrate and impede efforts to resolve this case in a timely and fair fashion and, under the rules of this court, warrant dismissal of this lawsuit. Local

Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well settled that, "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.'" <u>Williams v. Lebanon Farms Disposal, Inc.</u>, Civ. No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug. 26, 2010) (quoting <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (3d Cir. 1991)). In this case, the plaintiff has not complied with the local rules or this Court's Order by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. <u>See</u> Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also

> requires that the merits of a particular dispute be placed before the court
> in a timely fashion . . . ."

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D. Pa. 2010) (quoting McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir. 1998)).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion.'" Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules and orders of this Court does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to this motion to dismiss pursuant to the extension of time granted by this Court. This failure now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion.

**B. Dismissal of this Case Is Warranted Under Rule 41.**

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to

prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002) (citations omitted). That discretion, while broad, is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Emerson, 296 F.3d at 190 (quoting Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984)).

In exercising this discretion, "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011) (quoting Briscoe v. Klaus, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case." Briscoe v.

Klaus, 538 F.3d at 263 (quoting Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992)). Consistent with this view, it is well settled that "'no single Poulis factor is dispositive,' [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.'" Briscoe v. Klaus, 538 F.3d at 263 (quoting Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003); Mindek, 964 F.2d at 1373). Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, 296 F.3d 184; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir.  2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders and has otherwise neglected to litigate this case.

Similarly, the second Poulis factor, the prejudice to the adversary caused by the failure to abide by court orders, also calls for dismissal of this action. Indeed,

this factor is entitled to great weight and careful consideration. As the Third Circuit

has observed:

> "Evidence of prejudice to an adversary would bear substantial weight
> in support of a dismissal or default judgment." Adams v. Trustees of
> New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863,
> 873-74 (3d Cir. 1994) (internal quotation marks and citation omitted).
> Generally, prejudice includes "the irretrievable loss of evidence, the
> inevitable dimming of witnesses' memories, or the excessive and
> possibly irremediable burdens or costs imposed on the opposing party."
> Id. at 874 (internal quotation marks and citations omitted). . . . .
> However, prejudice is not limited to "irremediable" or "irreparable"
> harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d
> Cir. 2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843
> F.2d 683, 693-94 (3d Cir. 1988). It also includes "the burden imposed
> by impeding a party's ability to prepare effectively a full and complete
> trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case, the plaintiff's failure to respond to the motion to dismiss or

comply with court orders, including his insistence that this matter be stayed pending

his state appeal despite an order denying such a stay, now wholly frustrates and

delays the resolution of this action. In such instances, the defendant is plainly

prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly

rests in the discretion of the trial judge. Tillio, 256 F. App'x 509 (failure to timely

serve pleadings compels dismissal); Azubuko, 243 F. App'x 728 (failure to file

amended complaint prejudices defense and compels dismissal).

The third Poulis factor, the history of dilatoriness on the plaintiff's part, is also

unfavorable to the plaintiff. In this regard, it is clear that " '[e]xtensive or repeated

delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' " Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted) (quoting Adams, 29 F.3d at 874). Here, although the plaintiff's failure to respond to the motion to dismiss in a timely manner appears to be his first untimely pleading in this case, he has also essentially ignored this Court's denial of a stay, instead seemingly submitting another letter explaining why a stay is appropriate, without responding to the defendants' motion. Although this does not amount to a history of dilatoriness, it does constitute repeated delay, as he has failed to respond in a timely manner and apparently ignored a prior order denying the stay of proceedings. Thus, we find this factor to weigh in favor of dismissal.

The fourth Poulis factor, whether the conduct of the party or the attorney was willful or in bad faith, also cuts against the plaintiff in this case. In this setting, we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams, 29 F.3d at 875. At this juncture, when the plaintiff has failed to comply with instructions of the court directing the plaintiff to take specific actions in this case, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions. Further, despite the plaintiff's receipt of the court order

10

denying a stay of proceedings and instructing him to submit a brief in opposition to the motion to dismiss, the plaintiff's most recent submission appears to simply reiterate his belief that he has a right to a stay pending an appeal in his state proceedings, despite being directly ordered otherwise by this Court. This demonstrates that his conduct is willful and weighs in favor of dismissal.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe, 538 F.3d at 262-63; Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, this Court has been clear in its orders to the plaintiff, and only the sanction of dismissal remains available to the court.

Finally, and most importantly in this case, under Poulis, we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this plaintiff's claims since the plaintiff is now wholly non-compliant with his obligations as a litigant. In any event, it appears that Reaves' claims fail as a matter of law, yet another factor which favors

dismissal of this lawsuit. Accordingly, for the reasons set forth below, we will recommend that this complaint be dismissed.

## C. **Reaves' Claims Against These Defendants Fail on Their Merits.**

A merits analysis of Reaves' complaint reveals that all the claims made by Reaves fail as a matter of law. At the outset, we note that the plaintiff does not dispute that he was convicted of serious sexual offenses, including rape, that subject him to Pennsylvania sex offender registration requirements under the statute. Instead, the plaintiff asserts that this lifetime registration requirement itself violates his constitutional rights.

We first note that the complaint does not allege any personal involvement on the parts of Defendants Blocker and Evanchick. It is well settled that "a defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence but cannot be solely predicated on the operation of *respondeat superior*. Rode, 845 F.2d at 1207–08. A complaint may adequately allege a defendant's personal direction, or actual knowledge and acquiescence by "alleg[ing] the particulars of 'conduct, time, place, and persons responsible,'" and must allege more than a "mere hypothesis" that the defendant had knowledge or involvement in the incident. Muhammad v. Martin, No.

3:19-CV-1316, 2021 WL 832645, at *5 (M.D. Pa. Mar. 4, 2021) (quoting <u>Evancho</u> <u>v. Fisher</u>, 423 F.3d at 354; <u>Rode</u>, 845 F.2d at 1207-08)).

On this score, Reaves' complaint does not allege the personal involvement of Defendants' Blocker and Evanchick as it only names Defendant Rowles as the person who sent him the notice to register. Thus, dismissal of all causes of action against Blocker and Evanchick is proper, as the plaintiff has not alleged they committed any violations against him.

The plaintiff's claims also fail on constitutional grounds. He first asserts numerous causes of action under the Fourteenth Amendment, including an *ex post facto* violation, and violations of his right to marriage, procreation, privacy, equal protection, and reputation.

As to his *ex post facto* claim, the plaintiff takes issue with changes to his tier status resulting from the passage of multiple sex offender registration statutes since his conviction. He asserts that the most recent statute requiring him to register for life, SORNA II, violates the Ex Post Facto Clause of the Fourteenth Amendment as it is applied to his convictions before the statute's enactment. Both the United States Supreme Court and the Pennsylvania Supreme Court have addressed whether the retroactive application of sex offender registration laws violates *ex post facto* protections. The analysis of whether the enforcement of *ex post facto* legislation violates Article I, § 10 of the United States Constitution hinges on whether its

13

application constitutes a punishment. Smith v. Doe, 538 U.S. 84, 92 (2003). In considering whether the retroactive application of a state's sex offender registration and notification requirements was punitive, the Supreme Court in Smith held that if the intent of the legislation was to punish, then the requirement satisfies the *ex post facto* challenge. Id. at 93. However, if the intention was to enact a nonpunitive civil regulatory scheme, the Court must use a series of factors to determine whether the regulation is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Id. at 97. The Smith Court rejected the *ex post facto* challenge to the sex offender registration requirement at issue, finding that the registration and notification requirements were a civil regulatory scheme and nonpunitive in nature.

The Supreme Court's *ex post facto* analysis was applied by the Pennsylvania Supreme Court to Pennsylvania sex offender statutes in both Muniz, 640 Pa. 699, and Commonwealth v. Lacombe, 234 A.3d 602 (Pa. 2020). In Muniz, from which Reaves draws support for his argument, the Pennsylvania Supreme Court found SORNA I to be significantly different than sex offender registration statute upheld by the Supreme Court in Smith, finding it to be punitive in effect, and thus violative of *ex post facto* protections. In response, the Pennsylvania legislature enacted the statute at issue, SORNA II, the retroactive application of which the Pennsylvania Supreme Court found did not constitute criminal punishment and thus did not violate *ex post facto* protections. See Lacombe 234 A.3d at 626-27. The Pennsylvania

Supreme Court has since issued a *per curiam* order extending this ruling to individuals whose crimes were committed before the enactment of any sex offender registration schemes. See <u>T.S. v. Pennsylvania State Police</u>, 241 A.3d 1091 (Pa. 2020). Thus, the *ex post facto* issue raised by the plaintiff as it relates to the instant sex offender registration requirement has already been settled using well established constitutional standards. Accordingly, the plaintiff's claim fails as a matter of law.

The plaintiff's claims of violations of privacy, right to marriage, right to procreate, and right to reputation under the Fourteenth Amendment also fail. The Third Circuit has addressed the implications of a sex offender registry in the context of a registrant's constitutional right to privacy generally, and as it relates to familial relationships, which the plaintiff raises here as his right to marriage and right to procreate. In <u>Paul P. v. Verniero</u>, 170 F.3d 396, 405 (3d Cir. 1999), the Third Circuit noted, "Megan's Law does not restrict plaintiffs' freedom of action with respect to their families and therefore does not intrude upon the aspect of the right to privacy that protects an individual's independence in making certain types of important decisions." <u>Verniero</u>, 170 F.3d at 405. Further, "the registration and notification provisions of Megan's Law may evoke more publicity than usual, but that is the consequence of the nature of the crime. We cannot conclude that this indirect effect is a violation of the autonomous decision branch of the constitutional right of privacy." <u>Id.</u> at 405.

Further, the United States Supreme Court has declined to extend the constitutional right to privacy to protect one's reputation in contexts where it has "been altered as a result of [plaintiff's] actions," such as his commission of a crime, noting, "any harm or injury to [reputation], even whereas here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law." Paul v. Davis, 424 U.S. 693, 712 (1976). Thus, Reaves' allegation that his lifetime registration violates his right to privacy, right to marriage, right to procreate, or his right to reputation under the Fourteenth Amendment fail as a matter of law.

Further, Reaves' equal protection claim also fails on the merits. The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Reaves' equal protection claim in this case apparently advances what is called a "class of one" claim, an assertion that the plaintiff has been treated differently than all others in some invidious fashion. In order to sustain a "class of one" equal protection claim "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006). So, "to state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was

16

intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).

The plaintiff has not alleged that his lifetime SORNA registration amounts to an irrationally disparate treatment from other similarly situated individuals, or those who have been convicted of rape. Reaves is statutorily required to register for life based on the crime for which he was convicted. He does not allege that other individuals convicted of rape were subject to different requirements. Thus, he has failed to properly allege the first prong of the equal protection requirement, and his claim fails as a matter of law.

The plaintiff's Eighth Amendment claim of cruel and unusual punishment is also without merit. Specifically, Reaves asserts that increased housing instability due to his sex offender registration amounts to cruel and unusual punishment. As previously discussed, the Pennsylvania SORNA II registration requirements have been found to be non-punitive in nature under the Smith test, Lacombe at 626-27, and the Third Circuit has also held generally that Megan's Law requirements do not constitute punishment for purposes of the Ex Post Facto and Double Jeopardy Clauses. Verniero, 170 F.3d at 1105. Accordingly, the requirement to register as a sex offender is not a criminal punishment governed by the Eighth Amendment

standard, and the plaintiff's claim of cruel and unusual punishment fails as a matter of law.

Finally, the plaintiff's claim that the lifetime registration requirement under Pennsylvania law violates his right to fair housing is without merit. Reaves specifically alleges that the registration requirements violate his right to fair housing by depriving him of a VA HUD voucher. Under HUD regulations, persons subject to sex offender registration requirements are denied admission to the Housing Choice Voucher and Public Housing Programs, and participation in the program may be terminated if a participant engages in violent criminal activity or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and person residing in the immediate vicinity of the premises. 24 C.F.R. §§ 982.553(a)(2), 982.551(l). The plaintiff is subject to lifetime registration under Pennsylvania state law, and thus is denied admission to the programs under the current regulations. The plaintiff has not articulated the precise protection he asserts is violated by the enforcement of this regulation, and we do not find his right to HUD benefits is protected by the Constitution in this circumstance. Accordingly, his fair housing claim is without merit.

In sum, finding that the weight of the <u>Poulis</u> factors is in favor of dismissal of Reaves' claims against all the defendants, the defendants' motion to dismiss (Doc. 17), will be GRANTED.

An appropriate order follows.

Submitted this 19th day of November 2021.

_S/ Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge